UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────────

SANDRA A. MACIEJEWSKI

                              Plaintiff,

            v.

CAROLYN W. COLVIN, [1] Commissioner of
 Social Security,

                              Defendant.

────────────────────────────────

REPORT
and
RECOMMENDATION

14-CV-00542V(F)

APPEARANCES:        CHERMOL & FISHMAN, LLC
                    Attorneys for Plaintiff
                    DAVID F. CHERMOL, of Counsel
                    11450 Bustelton Avenue
                    Philadelphia, PA 19116

                    WILLIAM J. HOCHUL, JR.
                    UNITED STATES ATTORNEY
                    Attorney for Defendant
                    ANDREA LAURA LECHLEITNER
                    Assistant United States Attorney, of Counsel
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202, and

                    STEPHEN P. CONTE
                    Regional Chief Counsel
                    United States Social Security Administration
                    Office of the General Counsel, of Counsel
                    26 Federal Plaza
                    Room 3904
                    New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on December 31, 2014.[1] (Doc. No. 9).  The matter is presently before the court on motions for judgment on the pleadings, filed on December 29, 2014, by Plaintiff (Doc. No. 7), and on January 5, 2015, by Defendant (Doc. No. 10).

## BACKGROUND

Plaintiff Sandra Maciejewski, ("Plaintiff" or "Maciejewski"), seeks review of Defendant's decision denying her Social Security Disability Insurance ("SSDI"), and Supplemental Security Income ("SSI") (together, "disability benefits") under Titles II and XVI of the Social Security Act ("the Act").  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of diabetes mellitus, hypertension, asthma and obesity, but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 19).[2] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform medium work.  (R. 20).  As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on November 20, 2012.

---

[1] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 23, 2015.
[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

## PROCEDURAL HISTORY

Plaintiff filed her applications for disability benefits on March 14, 2011 (R. 118-21), that were initially denied by Defendant on June 2, 2011, and, pursuant to Plaintiff's request filed June 14, 2011 (R. 90-91), a hearing was held before Administrative Law Judge William E. Straub ("Straub" or "the ALJ"), on October 23, 2012, in Buffalo, New York.  (R.86-134). Plaintiff, represented by Jerod Cook, Esq. ("Cook"), appeared and testified at the hearing.  (R.33-54). The ALJ's decision denying Plaintiff's claim was rendered on November 20, 2012.  (R. 15-26).

Plaintiff requested review by the Appeals Council (R. 5-11), and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on June 4, 2014.  (R. 1-4).  This action followed on July 3, 2014, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Doc. No. 1).

On December 29, 2014, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 8) ("Plaintiff's Memorandum").  Defendant filed, on January 5, 2015, Defendant's motion for judgment on the pleadings[2] ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum").  Oral argument was deemed unnecessary. Based on the following, Defendant's motion should be GRANTED, Plaintiff's motions for remand for calculation of benefits and alternatively, for further development of the record should be DENIED.

---

[2] The Secretary did not file an answer in this action, but did file a copy of the administrative record, which Plaintiff has incorporated by reference into the complaint.  As such, the administrative record may be considered on these motions for judgment on the pleadings under Rule 12(c).  *See Joseph v. Astrue,* 2007 WL 5035942, at *4 (S.D.N.Y. Dec. 28, 2007) (recognizing administrative record is incorporated into the pleadings for resolution of 12(c) motion).

## FACTS[3]

Plaintiff Sandra Maciejewski, ("Maciejewski" or "Plaintiff"), was born on October 21, 1959, lives with a friend (R. 120, 142), and has worked most recently as a manufacturing supervisor.  (R. 38).  Plaintiff alleges that she is not able to work because she has difficulty walking, is unable to stand on her feet, and has numbness in her hands from carpal tunnel syndrome.  (R. 40).

Relevant to the period of disability in this case, on March 17, 2010, Plaintiff visited Olivia Smith-Blackwell, M.D. ("Dr. Smith-Blackwell"), a physician at Meadow Family Medicine ("Meadow"), for a three-month follow-up examination where Plaintiff was diagnosed with hypertension, hypercholesterolemia, diabetes mellitus, gastro-esophageal reflux disease ("GERD"), and asthma.  (R. 238).  Plaintiff weighed 285 pounds and stood 60 ½ inches tall, was evaluated as obese, and was encouraged to lose weight, and engage in a low cholesterol diet and exercise.  (R. 238).  Plaintiff's diabetic glucose testing records reveal that Plaintiff's diabetes was well controlled from the disability onset date through April 11, 2011.  (R. 222-36).

In an undated diabetes mellitus residual functional capacity questionnaire, Dr. Smith-Blackwell opined that Plaintiff was capable of sedentary work with the limitation of frequent position changes between walking and sitting, that Plaintiff was able to sit for one hour at a time, stand for 10 minutes at a time, and sit and stand/walk for a total of 30 minutes in an eight hour workday, that Plaintiff would require unscheduled work breaks every half hour during the morning because of Plaintiff's water pills, and that

---

[3] Taken from the pleadings and the administrative record.

Plaintiff would be required to elevate her legs fifty percent of the time during prolonged periods of sitting in an average eight hour workday. (R. 365-68).

On May 2, 2011, John Schwab, D.O. ("Dr. Schwab"), an osteopath, completed an internal medical examination on Plaintiff at the request of the Social Security Administration, and noted that Plaintiff reported smoking one pack of cigarettes daily, and activities of daily living that include cooking on a daily basis, doing laundry, shopping, daily showering and dressing, and hobbies that include watching television and visiting with her family. (R. 345). Dr. Schwab evaluated Plaintiff as 61 inches tall and weighing 291 pounds, and opined that Plaintiff had a mild restriction to bending, lifting and carrying, but that Plaintiff's physical examination showed normal results. (R. 347).

That same day, Renee Baskin, PhD. ("Psychologist Baskin"), completed an adult psychiatric evaluation on Plaintiff on behalf of the Social Security Administration. Psychologist Baskin noted that Plaintiff was tearful, but easily engaged and polite, that Plaintiff's attention and concentration and remote and recent memory were mildly impaired from anxiety and nervousness about the exam, but that Plaintiff was able to understand and follow simple instructions, perform simple tasks independently, maintain concentration and attention, learn new tasks, perform complex tasks with supervision, and that Plaintiff's medical and physical problems may interfere with Plaintiff's ability to maintain a regular schedule. (R. 341-42). Psychologist Baskin assessed Plaintiff with Axis I[4] adjustment disorder with mixed and depressed mood, and pain disorder with a

---

[4] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality

general medical condition, Axis II no diagnosis, Axis III asthma, back pain, anemia, high blood pressure, diabetes, and leg pain.  (R. 342).

On June 1, 2011, Ted Andrews, M.D. ("Dr. Andrews"), a state agency consultant, reviewed Plaintiff's medical records and opined that Plaintiff did not have any significant limitations from her mental health impairments, and that Plaintiff's mental impairments were not severe.  (R. 60).

On August 15, 2011, Dr. Smith-Blackwell noted that Plaintiff reported that she was not exercising, that her diabetes was under control, and that she was feeling good. Dr. Smith-Blackwell encouraged Plaintiff to exercise and lose weight, and noted that Plaintiff's thought and mood were appropriate.  (R. 444-45).  Plaintiff's blood test revealed impaired renal function, leading Dr. Smith-Blackwell to refer Plaintiff to Maria Del Castillo, M.D. ("Dr. Del Castillo"), a nephrologist, who on September 21, 2011, diagnosed Plaintiff with chronic kidney disease and ordered a sleep study pursuant to Plaintiff's reported daytime fatigue.  (R. 362).

On September 22, 2011, Plaintiff's pulmonary function test revealed no obstructed air flow.  (R. 437).

On October 8, 2011, Eric Ten Brock ("Dr. Ten Brock"), a sleep specialist with the University at Buffalo Sleep Medicine Clinic, completed a sleep study on Plaintiff who exhibited sleep apnea, and advised Plaintiff to use a continuous positive airway pressure ("CPAP") machine on a nightly basis.  (R. 385).

---

disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors; and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

During physical examinations with Dr. Smith-Blackwell on January 16, 2012 and April 25, 2012, Plaintiff's diabetes and hypertension were well controlled. (R. 428, 376). Plaintiff reported a swollen wrist to Dr. Smith-Blackwell for which she received six sessions of physical therapy. (R. 395).

On June 16, 2012, Dr. Castillo completed an examination on Plaintiff whose liver and kidney tests were normal. (R. 370-72). A follow-up examination with Nurse Practitioner Patricia Smith at the Sleep Medicine Clinic showed Plaintiff with improved sleep using her CPAP machine. (R. 383).

On August 2, 2012, Dr. Smith-Blackwell noted that Plaintiff's diabetes was well controlled, with Plaintiff's GERD and hypertension controlled with medication. Plaintiff reported right leg pain for the previous month, leading Dr. Smith-Blackwell to refer Plaintiff for an orthopedic consultation. (R. 408). On August 13, 2012, Plaintiff visited the Knee Center of Western New York, where Physician Assistant Jeffrey Rassman ("Physician Assistant Rassman"), noted that Plaintiff reported that her left and right knee pain had become worse. Physician Assistant Rassman reviewed an X-ray taken the same day that revealed arthritis that was slightly worse in Plaintiff's left knee, recommended that Plaintiff undergo a steroidal injection to Plaintiff's left knee, and that Plaintiff attend physical therapy. (R. 404).

On August 31, 2012, Physician Assistant Rassman administered a left knee injection, and upon examination, noted Plaintiff's left knee revealed tenderness, no effusion of acute inflammation, and good range of motion and strength. (R. 401).

## DISCUSSION

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

A.   **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated

Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion is supported by the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits. *Id.*  Third, if there is an

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2010, the date of Plaintiff's alleged onset of disability. (R. 17). Plaintiff does not contest this determination.

**C.    Severe Physical or Mental Impairment**

The second step of the analysis requires a determination of whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, and significantly limits the claimant's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, capacities for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and

usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had severe impairments of diabetes mellitus, hypertension, asthma, and obesity as defined under § § 20 C.F.R. § 404.1520(c) and 404.920(c), but that Plaintiff's depression was non-severe.  (R. 17). Plaintiff contends that the ALJ improperly found Plaintiff's knee osteoarthritis, depression, kidney disease, anemia, sleep apnea, and cataracts to be non-severe impairments.  Plaintiff's Memorandum at 10-11.  Defendant maintains that the ALJ reasonably found Plaintiff's depression was not severe, as Plaintiff's depression did not have more than a minimal effect on Plaintiff's ability to perform basic work activities. Defendant's Memorandum at 14.

Step two of the disability review analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).  Step two severity determinations require that the ALJ complete a careful evaluation of medical findings, to inform the ALJ's judgment as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, and medical evidence alone is evaluated to assess the effects of a claimant's impairments on the claimant's ability to do basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856, at *4 (1985).  An ALJ's failure to account for a claimant's impairment normally does not

11

require remand where substantial evidence supports mere presence of the impairment, and the ALJ otherwise accounts for the impairment within the ALJ's residual functional capacity assessment of the claimant. *See Lowe v. Colvin,* 2016 624922, at *2 (W.D.N.Y. February 17, 2016). Courts have found that errors during step two of the disability analysis may be considered harmless if the ALJ finds at least one other severe impairment and continues through the sequence because the non-severe impairments can be later considered during the residual functional capacity analysis. *See Howard v. Commissioner of Social Security*, 2016 WL 4491627, at *12 (W.D.N.Y. August 25, 2016); *McCartney v. Commissioner of Social Security*, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009) (even if the court was to find that the ALJ erred in excluding headaches from the list of severe impairments, the error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential disability evaluation)).

**Depression**

In this case, the ALJ determined that Plaintiff's diabetes mellitus, hypertension, asthma and obesity were severe and included those impairments throughout the remaining steps of the ALJ's disability analysis. (R. 19-16). Moreover, in determining that Plaintiff's depression was not severe under step two of the disability review analysis, the ALJ noted that Plaintiff refused medication to treat her depression, was reported as able to "tolerate" her depression in a physical examination assessment completed on June 30, 2010, and included analysis of Plaintiff's depression using the criteria identified under the broad functional areas under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.00C. (R. 18-19). As the ALJ included Plaintiff's diabetes mellitus,

hypertension, asthma and obesity in the remaining steps of the disability review analysis, and Plaintiff received no regular psychiatric or pharmacologic therapy for depression, and provides no evidence to support that her depression was severe, the ALJ's determination that Plaintiff's depression was non-severe is without error and supported by substantial evidence.  *See Howard*, 2016 WL 4491627, at *12; *Torres v. Astrue*, 550 F. Supp.2d 404, 411 (W.D.N.Y. 2008).  Plaintiff's motion on this issue should be DENIED.

**D.    Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.03 ("§ 3.03") (Asthma), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 4.00 ("§ 4.00") (Cardiovascular system), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 9.08 ("§ 9.08") (Diabetes Mellitus).

As Plaintiff does not contest the ALJ's finding on Plaintiff's ability to meet the criteria of any listed impairment the court does not review the ALJ's finding at this step of the disability analysis.

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1 or retained the residual functional capacity to perform the claimant's past work, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

**Residual Functional Capacity**

In this case, the ALJ found that Plaintiff retained the residual functional capacity to perform the full range of medium work. (R. 20). The ALJ afforded "great weight" to

14

Dr. Schwab's consultative medical opinion that Plaintiff had only a mild restriction to bending, lifting and carrying (R. 26), and less than controlling weight to Dr. Smith-Blackwell's undated diabetes mellitus residual functional capacity assessment of Plaintiff wherein Dr. Smith-Blackwell opined that Plaintiff was capable of sedentary work with frequent position changes between walking and sitting, unscheduled work breaks every half hour during the morning because of Plaintiff's water pills, and the opportunity to elevate her legs fifty percent of the time during prolonged periods of sitting during an average eight-hour workday.  (R. 25, 365-68).

<u>Dr. Smith-Blackwell</u>

Plaintiff contends that the ALJ violated the treating physician rule by failing to identify the weight the ALJ afforded to the opinion of Plaintiff's treating physician Dr. Smith-Blackwell, and by failing to provide reasons for rejecting Dr. Smith-Blackwell's opinion that Plaintiff was capable of only sedentary work.  Plaintiff's Memorandum at 15-20.  Defendant maintains that the ALJ properly afforded no weight to Dr. Smith-Blackwell's opinion as such opinion was inconsistent with the consultative opinion of Dr. Schwab, and Plaintiff's own statements about her activities of daily living.  Defendant's Memorandum at 23-24.

It is the responsibility of the ALJ to weigh the record evidence and determine which medical source opinion is supported by medical evidence in the record and deserves more weight.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where medical opinions are inconsistent, ALJ's have discretion to apportion weight to the opinions).

Under 20 C.F.R. § 416.927(c)(4), ALJs are required to consider the following factors in weighing medical opinions of treating and non-treating physicians, and provide reasons for the weight assigned to each medical opinion:

      (1) Examining relationship
      (2) Treatment relationship
      (3) Supportability
      (4) Consistency
      (5) Specialization
      (6) Other relevant factors

20 C.F.R. § 416.927(c)(4).

In this case, the ALJ's finding that "none of [Plaintiff's] observable symptoms approach the magnitude that would require the disabling limitations that Dr. Smith-Blackwell has outlined in [Dr. Smith-Blackwell's] residual functional capacity assessment . . . [and] that treatment records from Dr. Smith-Blackwell note that [Plaintiff's] diabetes was well-controlled . . . [and that] Dr. Smith-Blackwell's opinion fails to be consistent and supported by the record as a whole" (R. 25), includes no evidence (in accordance with the factors under § 416.927(c)(4)), undermining Dr. Smith-Blackwell's opinion that Plaintiff was capable of performing only sedentary work with frequent posture changes and unscheduled bathroom breaks in the morning and results in a violation of the treating physician rule. (R. 23). Upon further review, and pursuant to the court's plenary authority, *see* 42 U.S.C. § 405(g), the court finds that Dr. Smith-Blackwell's opinion that Plaintiff is able to perform sedentary work is supported by substantial evidence in the record. In particular, Plaintiff testified that she is able to complete daily chores like cleaning and laundry (R. 144-45), cooks "basically everything," takes care of a pet dog and birds (R. 143), drives her housemate places

16

(R. 143, 145), shops for up to an hour at a time (R. 146), and travelled to Florida twice in a two-year period.   (R. 146).  Dr. Smith-Blackwell noted that Plaintiff reported "feeling good" (R. 444-45), and assessed Plaintiff with well-controlled diabetes and hypertension on January 16, 2012 (R. 428), April 25, 2012 (R. 376), and August 2, 2012 (R. 408).  On August 31, 2012, Plaintiff's right and left knee arthritis revealed no tenderness or inflammation, good range of motion and strength.  (R. 401).  As such, substantial evidence in the record supports Dr. Smith-Blackwell's finding that Plaintiff is capable of sedentary, not medium, work, and the court adopts such finding.

Dr. Baskin

Plaintiff asserts that the ALJ in this case included no finding as to the weight the ALJ afforded to Dr. Baskin's opinion that Plaintiff's medical and physical problems may interfere with Plaintiff's ability to maintain a regular schedule, and that Plaintiff had a moderate limitation dealing with stress.  Plaintiff's Memorandum at 6.   Defendant puts forth no response to Plaintiff's contention on this issue.

In instances where a treating source opinion is not given controlling weight by the ALJ such as here, ALJs are required to explain the weight afforded to the opinions of State agency medical or psychological consultants and other program physicians, psychologists or medical specialists.  *See* 20 C.F.R. § 404.1527(e)(2)(ii).  ALJs are not required to discuss each and every moderate limitation diagnosed by the agency consultant physicians, but error results when the ALJ's residual functional capacity assessment does not account for such limitations.  *See Gibbons Thornton v. Colvin*, 2016 WL 611041, at *4 (W.D.N.Y. Feb. 16, 2016) (no error where ALJ included physician identified limitations in the residual functional capacity assessment).  In this

case, little evidence in the record supports Dr. Baskin's finding that Plaintiff had a moderate limitation to stress as Plaintiff did not testify to any limitations resulting from stress, nor did Plaintiff indicate that she experienced stress prior to April 25, 2012 (R. 444), the date which Dr. Smith-Blackwell noted that Plaintiff reported that her depression was aggravated by stress.  (R. 417).  Notably, Plaintiff did not attend psychiatric counseling or take medication to treat her depression or stress, and none of Plaintiff's treatment providers suggested that Plaintiff receive such treatment. Accordingly, substantial evidence does not support Dr. Baskin's opinion that Plaintiff had a moderate limitation to stress, and no error results from the ALJ's failure to discuss the weight afforded to Dr. Baskin's opinion.  Plaintiff's motion on this issue is therefore without merit.

**E.  Plaintiff's ability to perform past relevant work**

In this case, the ALJ determined that Plaintiff was able to perform her past relevant work as a manufacturing supervisor, as that position did not require the performance of activities excluded by Plaintiff's residual functional capacity.  (R. 26). Plaintiff contends that the ALJ erred in not comparing Plaintiff's exertional and non-exertional limitations to Plaintiff's ability to perform her past relevant work.  Plaintiff's Memorandum at 14.  Defendant maintains that the ALJ's finding that Plaintiff is capable of performing Plaintiff's past relevant work is without error, as the ALJ included Plaintiff's work history and reported job requirements in such consideration.  Defendant's Memorandum at 25.

In determining whether a claimant's impairment(s) prevent the claimant from performing past relevant work, ALJs are required to  review the claimant's residual

18

functional capacity and physical and mental demands of the claimant's past work.  *See*

20 C.F.R. § 404.1520(e).  Specifically, the Commissioner must demonstrate the

applicant's "residual functional capacity" with regard to the applicant's strength and

"exertional capabilities."  *Id.*  An individual's exertional capability refers to the

performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*,

647 F.2d at 294*.*

Plaintiff reported that her job as a manufacturing supervisor required sitting for

two hours, walking for six hours, standing for six hours, climbing for one hour, and

stooping for four hours in an eight-hour workday, three hours of crouching, seven hours

of grasping, four hours of writing each day, and lifting up to 50 pounds, and 20 pounds

frequently (R. 157), and testified that she worked as a production supervisor for seven

years, work that required Plaintiff to be on her feet for a period of seven hours during a

nine-hour workday.  (R. 38).  The ALJ then determined that Plaintiff was capable of

performing Plaintiff's past relevant work as a manufacturing supervisor, previously

classified as work with an exertional level of "medium work."  (R. 26).

However, as indicated, Discussion, *supra*, at 17, the court adopts Dr. Smith-

Blackwell's opinion that Plaintiff is able to perform only sedentary work, which, by

definition, involves:

> [l]ifting no more than 10 pounds at a time and occasionally carrying articles like
> docket files, ledgers and small hand tools.  Although a sedentary job is defined
> as one which involves sitting, a certain amount of walking and standing is of
> necessary in carrying out job duties.  Jobs are sedentary if walking and standing
> are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(c).

19

Thus, the ALJ's finding that Plaintiff is able to engage in Plaintiff's past relevant work that was classified as "medium work" is without support of substantial evidence in the record, and substantial evidence shows that Plaintiff is able to perform only sedentary work.

## F. <u>Medical-Vocational Guidelines</u>

Upon determining that a disability claimant's severe medically determinable impairment prevents the claimant's performance of vocationally relevant past relevant work, a determination is made as to the claimant's ability to adjust to other work. *See* 20 C.F.R. § 404.1560(c)(1). The Medical Vocational Guidelines (hereinafter "the Grids"), set forth under 20 C.F.R. Pt. 404, Subpt. P, App. 2 Tables 1-3 ("App. 2 Tables 1-3"), are used to determine whether a claimant is disabled using factors that include the claimant's residual functional capacity, the vocational factors of age, education, and the skill level and the transferability of the claimant's previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(a) ("App. 2 §200(a)"). Plaintiff contends that had the ALJ conformed to the treating physician rule and adopted Dr. Smith-Blackwell's opinion that Plaintiff was capable of sedentary work, the Grids establish that Plaintiff was disabled. Plaintiff's Memorandum at 3. As discussed, Discussion *supra,* at 16, the court adopts Dr. Smith-Blackwell's finding that Plaintiff is capable of sedentary work. The court therefore relies on the Grids to provide the framework for determining Plaintiff's disability using Plaintiff's age, education, and transferability of work experience.

In instances like here, where a claimant was previously employed in a "semi-skilled" or "skilled" job,[5] the Commissioner must establish whether the claimant's skills are transferrable to new employment.  Plaintiff contends that Plaintiff's past work is not transferable, and that Plaintiff is therefore disabled under Rule 201.14 of the Grids. Plaintiff's Memorandum at 15.  Contrary to Plaintiff's assertion, Plaintiff's past relevant work as a manufacturing supervisor, is properly classified as "skilled" work (work that requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed), managerial work that is considered transferable to operation of either semi-skilled or unskilled work.[6]  20 C.F.R. § 404.1568(c).  Thus, Plaintiff's previous work experience as a manufacturing supervisor is "skilled" work that

---

[5] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

"Skilled work" is defined as work that "requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality determining the suitability of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. § 404.1568(c).

[6] Skills acquired doing managerial jobs have universal applicability across industry lines, and transferability of skills to industries differing from past work experience can usually be accomplished with very little vocational adjustment where jobs with similar skills can be identified as being within an individual's residual functional capacity.  *See* S.S.R. 82-41, at *6.

21

is transferable.  *Id.*  The court therefore turns to the Grids to provide the framework for determining disability using the claimant's age, education, and transferability of work experience.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 Tables 1-3 ("App. 2 Tables 1-3").

Plaintiff, age 53 at the time of the ALJ's decision, is considered a person closely approaching advanced age.  *See* App. 2 § 201.00(g) ("App. 2 § 201.00(g)").  Plaintiff testified that she had a high school education.  (R. 37).  As required by the Grids, Plaintiff, capable of performing sedentary work, and classified as a person who is closely approaching advanced age with a high school education, with work experience that is considered "skilled" or "semi-skilled" and therefore transferable to other occupations, is not disabled under  App. 2 Table 1 Medical-Vocational Rules 201.15 and 201.16.  Plaintiff's motion on this issue should therefore be DENIED.

**Vocational expert testimony**

Plaintiff contends that the ALJ was required to rely on the testimony of a VE to verify Plaintiff's past relevant work, and account for Plaintiff's nonexertional limitation of the need to use the bathroom every half hour during the morning.  Plaintiff's Memorandum at 11.  "The mere existence of a nonexertional impairment does not automatically require VE testimony or preclude reliance on the Grids, as such determinations are made on a "case-by-case" basis.  *Bapp,* 802 F.2d 601 at 603, 605. In this case, Plaintiff's alleged need for frequent bathroom breaks did not interfere with Plaintiff's ability to engage in daily activities, Plaintiff's testimony does not indicate any substantial interference, for example her ability to engage in travel and routine transportation activity, and Dr. Smith-Blackwell's undated opinion that Plaintiff would require unscheduled work breaks every half hour during the morning because of

Plaintiff's water pills is not supported by any other medical evidence in the record.  The court therefore finds that the testimony of a vocational expert is unnecessary.  *See Alford v. Colvin*, WL 6839554, at *15 (N.D.N.Y. Dec. 27, 2013) (holding that ALJ did not err in failing to consult a VE when a claimant's residual functional capacity included normal bathroom breaks from Chron's disease, because substantial evidence indicated that the claimant's Chron's disease did not interfere with the claimant's daily activities).

In sum, substantial evidence supports that Plaintiff has the residual functional capacity to perform sedentary work and given her transferable past work experience as required under the Grids Plaintiff is therefore not disabled.

## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 14) should be GRANTED, Plaintiff's motion for remand for calculation of benefits and alternative motion for judgment on the pleadings should be DENIED, and the clerk of the court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    December 21, 2016
          Buffalo, New York

23

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      December 21, 2016
            Buffalo, New York

24