```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

SANDRA MACIEJEWSKI,

      Plaintiff,

  -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security[1],

      Defendant.

**14-CV-542**
**DECISION AND**
**ORDER**

## **INTRODUCTION**

Plaintiff Sandra Maciejewski ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), claiming that Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("Commissioner" or "defendant"), improperly denied her applications for social security disability insurance ("SSDI") and supplemental security income ("SSI"). Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

On December 21, 2016, Magistrate Judge Leslie G. Foschio issued a Report and Recommendation ("R&R") (Docket No. 13) recommending that plaintiff's motion be denied and that defendant's motion be granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

For the reasons set forth below, the Court adopts the R&R in part and rejects the R&R in part. Specifically, the Court adopts the portion of the R&R finding that defendant violated the treating physician rule and rejects the portion of the R&R holding that plaintiff has the residual functional capacity ("RFC") to perform sedentary work and is thus not disabled. The Court agrees with and grants plaintiff's motion remanding this matter to the Commissioner for further administrative proceedings. Accordingly, the Commissioner's motion is denied.

## **PROCEDURAL HISTORY**

Plaintiff filed her applications for SSDI and SSI on March 14, 2011 and April 4, 2011, respectively. Administrative Transcript ("T.") 55, 118-128. Plaintiff alleged that she became disabled on March 1, 2010, as a result of diabetes, high blood pressure, anemia, asthma, arthritis, weakness in her hands, leg swelling, obesity, and depression. T. 165 Plaintiff's applications were initially denied. T. 55, 68-75. At plaintiff's request, Administrative Law Judge ("ALJ") William E. Straub conducted a hearing on June 21, 2012. T. 31-54. On November 20, 2012, the ALJ issued a decision denying plaintiff's claim for benefits. T. 12-26.

In applying the required five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA") (*see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. 2008) (detailing the five steps)), the ALJ made the following findings,

among others: (1) plaintiff met the insured status requirements of the Social Security Act through March 30, 2015; (2) plaintiff had not engaged in substantial gainful activity since March 1, 2010; (3) plaintiff's diabetes mellitus, hypertension, asthma, and obesity were severe impairments; (4) plaintiff's impairments did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (5) plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR 404.157(c); and (6) plaintiff was able to perform her past relevant work as a supervisor. T. 17-26.

On June 4, 2014, the Appeals Council denied plaintiff's request for review, making the ALJ's determination the Commissioner's final decision. T. 1-4. Plaintiff then commenced this action.

## **DISCUSSION**

### I. **Legal Standard**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). When considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by "substantial evidence" in the record. 42 U.S.C.

§ 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon the correct legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105–106 (2d Cir. 2003).

With respect to the Court's review of the R&R, when specific objections are made to a magistrate judge's report and recommendation, the district judge makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). When no objections or only general objections are made, the district judge reviews the report and recommendation for clear error or manifest injustice. *E.g., DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). After conducting the appropriate review, the district court may "accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In this case, plaintiff has objected to the portion of the R&R determining that plaintiff has the RFC to perform sedentary work and is thus not disabled (Docket No. 14). Defendant has replied to plaintiff's objections (Docket No. 16), but did not file any objections of her own.

## II. Relevant Medical Evidence

On May 2, 2011, plaintiff was examined by Dr. John Schwab, D.O., at defendant's request. T. 344. Plaintiff reported a history of depression, asthma, anemia, hypertension, diabetes, and low-back pain, and reported having had surgery for carpal tunnel syndrome in 2002. *Id*. Plaintiff reported her medications as lantus insulin, metformin, advair, actos, furosemide, doxazosin, atenolol, nexium, and metolazone. T. 345. On examination, plaintiff was not in acute distress. *Id.* Her gait and stance were normal, her squat was full, and she had a full range of motion in her cervical and lumbar spine and all of her joints. T. 345-46. On both the left and right, straight leg raising was possible only to 30 degrees. T. 346. Dr. Schwab assessed plaintiff with mild restrictions to bending, lifting, and carrying. T. 347.

Plaintiff was also examined by consultative psychiatrist Renee Baskin, Ph.D., on May 2, 2011. T. 339. Plaintiff reported suffering from depression and anxiety. T. 340. On examination, plaintiff was cooperative and related well. *Id*. Her mood was dysthymic and her affect was tearful. T. 341. Plaintiff

exhibited mildly impaired attention, concentration, and memory, and was able to slowly count and do simply calculations. *Id*. Plaintiff's insight and judgement were fair to good and her intelligence was estimated to be in the low-average range. *Id*. Dr. Baskin opined that plaintiff would have moderate limitations in being able to deal with stress and mild to no limitations in being able to follow and understand simple instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, make appropriate decisions, and relate adequately with others. T. 342.

Dr. Olivia Smith-Blackwell, M.D., of Meadow Family Medicine ("MFM") has been plaintiff's primary care physician since 2007. T. 364. On August 15, 2011, plaintiff was seen by Dr. Smith-Blackwell at MFM and reported coughing, shortness of breath, and wheezing. T. 444. At that time, plaintiff's diabetes was "mostly well-controlled" and her hypertension was well-controlled. *Id*. Plaintiff was taking her medication as instructed. *Id*. Dr. Smith-Blackwell assessed plaintiff with diabetes with renal manifestations (controlled), goiter, asthma, hypertensive heart and kidney disease, esophagitis reflux, and obesity. T. 445.

Bloodwork performed on August 15, 2011, showed impaired renal function, and plaintiff was referred to nephrologist Dr. Maria Del Castillo. T. 361. On September 21, 2011, Dr. Castillo diagnosed plaintiff with chronic kidney disease. T. 362. Dr. Castillo also recommended a sleep study based on plaintiff's complaints of snoring and daytime fatigue. *Id*.

Plaintiff underwent a nocturnal poly-somnogram on October 8, 2011 that revealed severe sleep apnea. T. 390. Plaintiff was advised to use a CPAP machine nightly. T. 388. At a follow-up appointment on January 9, 2012, Dr. Eric Ten Brock noted that plaintiff was compliant and having a positive clinical response to the CPAP machine. T. 384-85.

Plaintiff was seen by Dr. Smith-Blackwell on January 16, 2012. T. 428-31. Plaintiff continued to experience coughing, wheezing, and shortness of breath. T. 428. Her diabetes and hypertension were well-controlled and her GERD was uncontrolled. *Id*. Plaintiff's medications included atenolol, actos, furosemide, metolazone, insulin, metformin, advair, pantoprazole, and lisinopril. T. 428-29. On examination, plaintiff's affect and attitude were depressed. T. 430. Dr. Smith-Blackwell prescribed plaintiff zoloft and recommended counseling. *Id*.

On April 25, 2012, plaintiff was seen at MFM by Nurse Practitioner ("NP") Elizabeth Zak. T. 374-77. Plaintiff's diabetes was well-controlled, as was her hypertension. T. 374. Plaintiff rated her depression as moderate to severe and reported experiencing moderate crying and irritability. *Id*. NP Zak assessed plaintiff with diabetes with renal manifestations, hypercholesterolemia, esophagitis reflux, depressive disorder, asthma, and joint pain in the hand. T. 376.

Plaintiff began physical therapy for her left wrist on June 14, 2012. T. 395. Plaintiff attended six physical therapy

sessions between June 14, 2012 and July 11, 2012, and was discharged after having met most of her goals. *Id*.

Plaintiff was seen by Dr. Castillo on June 16, 2012. T. 370. Dr. Castillo noted that plaintiff had been successfully losing weight and encouraged her to continue. T. 370, 373. Plaintiff's creatine had returned to baseline levels. T. 372.

Plaintiff treated with Dr. Smith-Blackwell at MFM on August 2, 2012. T. 405. Plaintiff reported experiencing pain in her right leg and was given an orthopedic referral. T. 408. On August 13, 2012, plaintiff was seen by Physician's Assistant ("PA") Jeffrey Rassman of the Knee Center WNY. T. 404. X-rays revealed bilateral arthritis, slightly worse on the left. *Id*. PA Rassman recommended physical therapy and a steroid injection. *Id*. Plaintiff recevied a left-knee steroid injection on August 31, 2012. T. 401.

Dr. Smith-Blackwell completed an undated "Diabetes Mellitus Residual Functional Capacity Questionnaire" in which she noted that plaintiff suffered from fatigue, extremity pain and numbness, difficulty walking, muscle weakness, diminished manual dexterity, leg cramping, difficulty thinking/concentrating, swelling, kidney problems, frequent urination, and hypoglycemic attacks. T. 364-65. Dr. Smith-Blackwell opined that plaintiff was capable of performing low stress, sedentary work, so long as she could frequently change position between walking and sitting. T. 365. Dr. Smith-Blackwell further opined that plaintiff would require unscheduled bathroom breaks every 30 minutes in the morning as a result of her water pills. T. 367.

**III. Relevant Non-Medical Evidence**

Plaintiff was born in 1959 and was 53 years old on the date of the ALJ's decision. T. 210. Plaintiff completed high school and had worked as a supervisor for a printer manufacturer from July 1994 to June 2009. T. 156, 166. Plaintiff stopped working in 2009 when her job was eliminated and was unable to procure new employment. T. 37-40.

In a questionnaire completed on March 25, 2011, plaintiff reported that she had difficulty standing and sitting for long periods of time and with climbing, kneeling, squatting, and opening jars. T. 147-48. Plaintiff further reported being able to care for her personal needs and doing chores such as cleaning, laundry, and pet care. T. 143-45. Plaintiff stated that she was able to drive and shop for up to one hour. T. 145-46.

Plaintiff testified before the ALJ that her primary ailments were related to her back and leg conditions. T. 41. Plaintiff told the ALJ that she was not being treated for her back condition, but that she was receiving physical therapy to strengthen her legs and receiving cortisone shots in her knees. T. 41-42, 47. Plaintiff reported using a CPAP machine to treat sleep apnea and suffering from numbness in her hands. Tr. 52-53.

**IV. The ALJ Violated the Treating Physician Rule**

Plaintiff argues, and Judge Foschio found in the R&R, that the ALJ violated the treating physician rule when he afforded less than controlling weight to Dr. Smith-Blackwell's medical opinion. The Court agrees.

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6).

In this case, the ALJ did not specify how much weight he gave to Dr. Smith-Blackwell's opinion, stating only that it "[did] not

-10-

carry controlling weight." T. 25. In support of this assessment, the ALJ stated that "the treatment records from Dr. Smith-Blackwell note that [plaintiff's] diabetes was well controlled" and that "the doctor's opinion fails to be consistent and supported by the record as a whole." *Id*. Judge Foschio found in the R&R that the ALJ's conclusion was flawed because the ALJ failed to identify any evidence of record "undermining Dr. Smith-Blackwell's opinion that Plaintiff was capable of performing only sedentary work with frequent posture changes and unscheduled bathroom breaks in the morning. . . ." (Docket No. 13 at 17). Judge Foschio's conclusion is well-founded. The sole evidence of record identified by the ALJ in reaching his conclusion was Dr. Smith-Blackwell's assessment of plaintiff's diabetes as "well-controlled." The ALJ provided no explanation for how this evidence purportedly undermined Dr. Smith-Blackwell's assessment of plaintiff's postural limitations. Moreover, the record indicates that part of plaintiff's treatment for her various conditions (including her kidney issues) is to take diuretics (water pills). It is apparently the water pills, and not plaintiff's diabetes itself, that necessitates frequent bathroom breaks. T. 367. Under these circumstances, Dr. Smith-Blackwell's assessment of plaintiff's diabetes as "well-controlled" is fully consistent with her opinion that plaintiff would require frequent bathroom breaks - the phrase "well-controlled" cannot reasonably be construed as precluding the possibility of side effects from medication. The Court therefore agrees with Judge Foschio that the ALJ violated the treating physician rule by affording less than

controlling weight to the opinion of treating physician Dr. Smith-Blackwell without articulating good reasons to do so.

**V. Remand for Further Development of the Record is Necessary**

Despite having found that the ALJ violated the treating physician rule, Judge Foschio nevertheless recommended that the Court grant defendant's motion for judgment on the pleadings, based on his conclusion that plaintiff retained the RFC to perform sedentary work and was thus not disabled under the Medical Vocational Guidelines (commonly referred to as the "Grids") set forth at 20 C.F.R., Pt. 404, Subpt. P., App. 2, Tables 1-3. *See* Docket No. 13 at 21. The Court disagrees that the record permits this conclusion.

In concluding that plaintiff was not disabled, the R&R repeatedly states that Dr. Smith-Blackwell opined that plaintiff was capable of "sedentary work." *See, e.g.,* Docket No. 13 at 21, 22. However, as acknowledged elsewhere in the R&R, Dr. Smith-Blackwell medical opinion imposed additional limitations, including frequent posture changes and unscheduled bathroom breaks in the morning.

"Generally speaking, if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. . . . Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, application of the grids is inappropriate. Instead, the Commissioner must introduce the testimony of a vocational expert

(or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) (internal citations and quotations omitted). A vocational expert is required where the claimant's nonexertional impairments "significantly diminish" her ability to work, and the need for a vocational expert is assessed on a case-by case basis. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

Here, Dr. Smith-Blackwell opined that plaintiff had a non-exertional limitation of frequent bathroom breaks in the morning due to the use of water pills. The need to frequently use the bathroom "likely affects the scope of work available to [an individual]." *Martin v. Astrue*, 2009 WL 2356118, at *13 (S.D.N.Y. July 30, 2009). Under these circumstances, it is not appropriate for the Court to rely upon the Grids to determine whether plaintiff is disabled. Instead, the case must be remanded to the Commissioner to further develop the record and seek the testimony of a vocational expert.

## **CONCLUSION**

For the reasons set forth above, the undersigned adopts that portion of the R&R finding that the Commissioner violated the treating physician rule and rejects that portion of the R&R finding that plaintiff had the RFC to perform sedentary work and was therefore not disabled. The Commissioner's motion for judgment on the pleadings (Docket No. 10) is denied and plaintiff's motion for

judgment on the pleadings (Docket No. 7) is granted to the extent that the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

                                          **s/Michael A. Telesca**

                                        _____
                                             MICHAEL A. TELESCA
                                      United States District Judge

Dated:    April 27, 2017
             Rochester, New York